United States Bankruptcy Court
Southern District of Texas
**ENTERED**
April 07, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 20-33274 |
| LILIS ENERGY, INC., *et al.*, § | |
| Debtors. § | Jointly Administered |
| § | CHAPTER 11 |

### MEMORANDUM OPINION

After filing for bankruptcy, Lilis Energy[1] failed to pay pre-petition mineral interest royalties due to Tilden Capital Minerals, LLC. Now, Tilden seeks recovery of those unpaid royalties. However, Lilis's Plan of Reorganization treats claims for unpaid royalties as general unsecured claims. According to the Trustee of Lilis's Liquidating Trust, a general unsecured claim is all Tilden is entitled to at this stage. Tilden relies on Texas law to argue that the unpaid royalties held by Lilis were never Lilis's property but were instead held in trust for Tilden's benefit. Hence, Tilden maintains that Lilis could not use the unpaid royalties to satisfy Lilis's other creditors because the royalties were never part of Lilis's estate. Through a request for relief from the Confirmation Order, Tilden contends that Lilis must either pay the unpaid royalties still in Lilis's possession or be held accountable for the wrongful conversion of Tilden's property.

Lilis's Plan plainly addressed Tilden's claim for unpaid royalties. Tilden failed to object to the Plan's treatment of unpaid royalty claims and failed to appeal the Plan's confirmation. Tilden is now bound by the Plan's treatment of unpaid royalty claims. Tilden's request for relief from the Confirmation Order is denied.

---

[1] Lilis Energy, Inc. sought chapter 11 protection along with its affiliate debtors: Brushy Resources, Inc.; Hurricane Resources, LLC; Impetro Operating LLC; Impetro Resources LLC; Lilis Operating Company, LLC. (ECF No. 28 at 1–2). Tilden Capital Minerals, LLC seeks recourse against Lilis Energy, Impetro Operating LLC, and their affiliate debtors. (ECF No. 875 at 2).

## BACKGROUND

Tilden Capital Minerals, LLC holds mineral interests in oil and gas leases Lilis Energy owned or operated before Lilis filed for bankruptcy in June 2020. (ECF No. 875 at 2). Under those leases, Lilis was obligated to pay Tilden royalties. (ECF No. 875 at 1). As of its June 2020 petition, Lilis owed Tilden $49,491.86 in unpaid royalties. (ECF No. 932 at 1).

During its bankruptcy, Lilis obtained an order authorizing the ordinary-course payment of outstanding pre-petition royalties. (ECF No. 58 at 1 (the "Royalty Payment Order")). The Royalty Payment Order only authorized Lilis to pay "undisputed" pre-petition amounts, and nothing in the Royalty Payment Order required payment of outstanding royalties. (ECF No. 58 at 2–5). Lilis did not pay Tilden's outstanding royalties under the Royalty Payment Order.

Lilis's amended schedules identified Tilden as the holder of two general unsecured claims. (ECF No. 351 at 29). Tilden had an undisputed, non-contingent claim for $49,491.86 in "suspen[ded]" royalties and a disputed, contingent claim for $2,571.87 in "suspen[ded]" royalties. (ECF No. 351 at 29). After discovering its claims had been scheduled as general unsecured claims, Tilden sought leave to late file a proof of secured claim for $49,491.86 based on the unpaid royalties. (*See generally* ECF No. 875). In the absence of evidence establishing excusable neglect justifying the proof of claim's untimely filing, the Court denied Tilden's request. (ECF No. 909). Tilden was then left with one general unsecured claim for $49,491.86.

Though Lilis had already scheduled Tilden's claim as an unsecured claim, the Liquidating Trustee sought a determination that Lilis's Plan treated Tilden's claim for unpaid royalties as a general unsecured claim. (ECF No. 901 at 6, 10). In response, Tilden again pressed that its claim should not be treated as a general unsecured claim and that the claim's contrary treatment under the Plan conflicted with Texas law. (ECF No. 904 at 1–2). Specifically, Tilden maintained that,

under Texas law, Lilis held Tilden's unpaid royalties in trust for Tilden's benefit, thereby precluding their inclusion in Lilis's bankruptcy estate. (ECF No. 932 at 2). Tilden also argued that the Royalty Payment Order established that Lilis should have paid Tilden's claim in full. (ECF No. 932 at 3).

The parties' dispute centers on Lilis's Plan's effect on Tilden's unpaid royalty claim. Lilis's Plan included a "good faith compromise and settlement of all Claims, Interests, issues, disputes and controversies," under which:

> [A]*ll rights to payment* or production resulting from any working interest granting the right to exploit oil and gas, and *certain other royalty or mineral interests including but not limited to, landowner's royalty interests*, overriding royalty interests, net profit interests, and non-participating royalty interests, held by any non-debtor and *arising before the Petition Date, and any and all Claims, liabilities, and obligations arising therefrom*, including Claims and payment obligations arising before the Petition Date, in each case not already paid by the Debtors in the ordinary course pursuant to the [Royalty Payment Order, *would be*] *treated as Unsecured Claims under the Plan* and shall be compromised and/or released by the Plan.

(ECF No. 673 at 101 (emphasis added)). According to the Liquidating Trustee, this provision conclusively forecloses Tilden's requested treatment. (ECF Nos. 937 at 3; 968 at 5–6).

Tilden received notice of Lilis's bankruptcy and the Plan before the confirmation hearing. (ECF No. 893-1 at 3–4). Tilden also filed a proof of claim in advance of the confirmation hearing. (*Compare* ECF No. 875-3 at 1, *with* ECF No. 673). Tilden does not dispute that it received notice of the Plan, and Tilden does not claim it was denied an opportunity to participate in the confirmation hearing or the Plan process.

Despite the Plan's plain language, Tilden persists that this provision contravened Texas law and should have prevented the Court from confirming the Plan. (ECF No. 958 at 3–6). Since Tilden did not appeal the Confirmation Order, Tilden's proposed remedy is relief from or vacatur of the Confirmation Order under Rule 60 or 11 U.S.C. § 1144. (ECF No. 958 at 2). Alternatively,

Tilden seeks leave "to proceed with an adversary proceeding under 11 U.S.C. § 362 to determine whether [Lilis committed] fraud, willful misconduct and/or gross negligence" in its use of Tilden's unpaid royalties. (ECF No. 958 at 7).

The Court held a hearing on Tilden's request for relief from the Confirmation Order. There, the Court pressed Tilden's counsel to reconcile Tilden's position—that it is entitled to relief because the Plan could not, legally, treat Tilden's claim as unsecured—with *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010) ("[T]he Bankruptcy Court's failure to find undue hardship before confirming Espinosa's plan was a legal error. But the order remains enforceable and binding on United because United had notice of the error and failed to object or timely appeal." (internal citations omitted)); (*See* ECF Nos. 943, 944). After providing the parties time to brief *Espinosa's* applicability here, the Court took the matter under advisement.

## JURISDICTION

The Court has jurisdiction over Lilis's bankruptcy under 28 U.S.C. § 1334. The District Court referred Lilis's case to the Bankruptcy Court consistent with 28 U.S.C. § 157(a) and General Order 2012-6. Tilden seeks relief from Lilis's confirmed Plan of Reorganization, which is a core matter under 28 U.S.C. § 157(b)(A), (B), and (L).

## DISCUSSION

Tilden argues it should not be bound by Lilis's Plan. However, upon confirmation, Lilis's Plan became a binding judgment on all Lilis's creditors, including Tilden. While there are mechanisms that afford certain creditors relief from confirmed plans, Tilden cannot rely on those mechanisms here. Lilis's Plan binds Tilden. Tilden's request for relief from the Plan's treatment of Tilden's claim is denied.

Confirmed plans bind creditors like Tilden. *Espinosa*, 559 U.S. at 269.[2] However, both the Bankruptcy Code and the Federal Rules of Civil Procedure provide mechanisms that can nullify a confirmed plan's binding effect. *See, e.g.,* 11 U.S.C. § 1144 (authorizing relief from a confirmation order procured by fraud); FED. R. CIV. P. 60(b) (enumerating grounds justifying relief from judgment). Tilden argues it is entitled to relief from the Confirmation Order under Rule 60(b)(3) and (4). Additionally, Tilden's allegations of "fraud, willful misconduct, and/or gross negligence" suggest Tilden also seeks relief based on 11 U.S.C. § 1144. (*See* ECF No. 958 at 2, 6–7).[3]

Tilden bases its request for relief on Texas law, which recognizes royalty owners as the "true" owners of royalties held by a lessee (or operator). *See Dahlberg v. Conoco Phillips Co. (In re Reichmann Petroleum Corp.)*, 434 B.R. 790, 797 (Bankr. S.D. Tex. 2010) (citing *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 426 (Tex. 2008)) ("[R]evenue earned by those working interests became the property of [royalty owners], regardless of whether those revenues were 'held' by [the operator]."). Because mineral interest owners own unpaid royalties, Texas law precludes a lessee (or operator) from using unpaid royalties in derogation of the mineral interest owner's rights. *Id.* at 797 ("Because Plaintiffs' [interest in the revenues] did not belong to [the operator], [the operator] could not release Plaintiffs' right to their revenue."). Essentially, lessees hold unpaid royalties in trust for royalty owners' benefit. *Id.* ("Even if [the operator] held legal title to the Plaintiffs' working interests, [the operator] held such title in a constructive or resulting trust for Plaintiffs' benefit.").

---

[2] Technically, the order confirming a plan of reorganization gives the plan binding effect. 11 U.S.C. § 1141(a), (d) (2020).

[3] Tilden also cites § 1328(e) as a basis for relief. However, § 1328(e) does not apply here, as Lilis availed itself of Chapter 11's protections, not Chapter 13's. *See* 11 U.S.C.§ 1328(e). Instead, Tilden likely intended to invoke § 1144, § 1328(e)'s counterpart. *See* § 1144.

Tilden maintains that the nature of its ownership interest in the unpaid royalties precluded their inclusion in Lilis's estate. *Id.* (citing *Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1117 (5th Cir. 1995)) ("Under Texas law and controlling bankruptcy authority, property held in constructive trust by the debtor is not the property of the debtor's estate and may not be disposed of by the debtor."). Unfortunately for Tilden, Lilis's Plan treated the unpaid royalties as if they were included in the estate and left Tilden with a general unsecured claim on account of the royalties. (ECF No. 958 at 3–5). That treatment, according to Tilden, should have prevented the Court from confirming Lilis's Plan. (ECF No. 958 at 4, 7).

### A.   The Confirmation Order and Plan Bind Tilden

Tilden now requests relief under Rule 60(b), arguing that the Confirmation Order is either "void" or was procured through fraud. *See* FED. R. CIV. P. 60(b)(3), (4).[4] A judgment, such as a confirmation order, is only void "in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271 (discussing voidness under Rule 60(b)(4)). Mere error will not support relief under Rule 60. *Id.* at 270. Nor can Rule 60 be used as "a substitute for a timely appeal." *Id.*

To be entitled to relief under Rule 60(d)(4), Tilden had to establish that the Court lacked an "arguable basis" for jurisdiction when it entered the Confirmation Order, or that the Confirmation Order's entry violated Tilden's *constitutional* due process right. *Id.* at 271, 273. Tilden does not suggest it was denied due process. Rather, Tilden identifies the Plan's inconsistency with Texas law as the source of the Confirmation Order's voidness. That is, because

---

[4] Bankruptcy Rule 9024 makes Rule 60 applicable to this dispute. FED. R. BANKR. P. 9024.

the Plan could not dispose of property that did not belong to the estate (*i.e.,* Tilden's unpaid royalties), the Court could not confirm the Plan.

The Fifth Circuit foreclosed Tilden's argument in *Oklahoma State Treasurer v. Linn Operating (In re Linn Energy, LLC)*, 927 F.3d 862 (5th Cir. 2019). There the Fifth Circuit rejected Oklahoma's claim to unclaimed royalty proceeds held by a bankrupt lease operator, Linn Energy. *Id.* at 864. Under Oklahoma law, the State was entitled to unclaimed royalties from oil and gas leases. *Okla. State Treasurer v. Linn Operating, Inc.*, No. 6:17-CV-0066, 2018 WL 1535354, at *1 (S.D. Tex. Mar. 29, 2018), *rev'd sub nom. Linn Energy*, 927 F.3d 862 (citing OKLA. STAT. tit. 52, §§ 52–551 (2017)). Oklahoma argued that the plan could not dispose of its claim to the unclaimed royalties in derogation of Oklahoma law. *Linn Energy*, 927 F.3d at 865. However, Linn Energy's plan treated "any right to payment from a Royalty and Working interest . . . [as a] General Unsecured Claim." *Id.* (internal quotation marks omitted). The plan also clarified that "the distributions, rights, and treatment that are provided in the Plan *shall be in complete satisfaction, discharge, and release*, . . . of Claims . . . Interests, and Causes of Action of any nature whatsoever." *Id.* at 865 (quotation cleaned up and emphasis added). The Fifth Circuit held that Oklahoma's failure to object to or appeal from the confirmation order, after receiving an opportunity to vote on the plan, foreclosed its claim to the royalty proceeds. *Id.* at 867–68. The plan, as a binding judgment, dictated the relief to which Oklahoma was entitled—a general unsecured claim. *Id.* at 867.

Tilden's voidness argument is almost indistinguishable from Oklahoma's argument in *Linn Energy*. Here, however, Lilis's Plan is even more explicit. The Plan is clear that its treatment of Tilden's claim as a general unsecured claim "constitute[s] a good faith compromise and settlement of all Claims, Interests, issues, disputes and controversies that were, or could have been asserted

in connection with the Chapter 11 Case." (ECF No. 673 at 101). Having received notice that the Plan settled Tilden's claim, (ECF No. 893-1 at 3–4), it was on Tilden to object to the Plan based on its perceived legal error or appeal the Confirmation Order. *See Linn Energy*, 927 F.3d at 867. Tilden failed to timely challenge the Plan's treatment of Tilden's claim. Tilden cannot now rely on Rule 60(b)(4) to circumvent the consequences of inaction. *See Espinosa*, 559 U.S. at 276.

Notwithstanding the Plan's binding effect, its treatment of Tilden's claim did not necessarily contravene Texas law. Assume Tilden is correct in alleging that Lilis converted Tilden's property prior to filing bankruptcy. Tilden would have a pre-petition claim for conversion. However, that pre-petition claim would, indisputably, be treated as a general unsecured claim in the bankruptcy case.[5] Functionally, Lilis's Plan gave Tilden exactly what it would have received had Lilis converted Tilden's property. Accordingly, the Confirmed Plan is not necessarily inconsistent with Texas law. In either case, Tilden receives a general unsecured claim. *See Espinosa*, 559 U.S. at 275 (holding that a confirmed plan binds creditors, even if the plan contains a legal error).

Tilden's alternative request for relief based on alleged fraud rests on Rule 60(b)(3) and 11 U.S.C. § 1144. Rule 60(b)(3) affords parties one year to seek relief from a judgment procured by fraud. FED. R. CIV. P. 60(b)(3), (c)(1). In contrast, § 1144 curtails the timeframe for seeking relief from a confirmation order procured by fraud, leaving litigants 180 days to request such relief. 11 U.S.C. § 1144. Bankruptcy Rule 9024 makes clear that Rule 60(b)(3)'s prospect of relief from a confirmation order is limited to § 1144's 180-day timeframe. FED. R. BANKR. P. 9024(3); *see also*

---

[5] Notably, unlike a chapter 7 discharge, the discharge a corporate debtor receives in chapter 11 can encompass conversion claims. *See* 11 U.S.C. § 523(a)(6) (excepting conversion claims from discharge only in "individual debtor" cases); § 1141(d)(2) (affirming that an "individual" debtor's discharge under § 1141 does not encompass non-dischargable debts identified in § 523(a)); *see also Grothues v. IRS (In re Grothues)*, 226 F.3d 334, 337 (5th Cir. 2000) ("[T]he discharge-exception 11 U.S.C. §§ 1141(d)(2) and 523(a)(1)(C), at issue here, applies only to individual debtors[, not corporate debtors].").

*Anti Lothian Bankr. Fraud Comm. v. Lothian Oil, Inc. (In re Lothian Oil, Inc.)*, 508 F. App'x 352, 356–57 (5th Cir. 2013) ("The one-year limit on Rule 60(b) motions provided in Bankruptcy Rule 9024 is expressly subject to the § 1144 limit.").[6] The Court confirmed Lilis's Plan on November 17, 2020. (ECF No. 673). Tilden sought relief from the Confirmation Order on June 30, 2021— 225 days after confirmation and 45 days after § 1144's deadline.[7] Section 1144 bars the relief Tilden requests based on alleged fraud.

### B. The Plan Conclusively Satisfied Tilden's Claim to the Unpaid Royalties

Finally, Tilden seems to request relief from the discharge injunction imposed by the Confirmation Order and 11 U.S.C. § 1141(d). Specifically, Tilden asks for "relief from the Confirmation Order to pursue a claim against [Lilis] for the recovery of the Royalty Funds on the basis of fraud, willful misconduct and/or gross negligence according to the terms of the Amended Plan." (ECF No. 958 at 7). As grounds for its request, Tilden points to carve-out language in the Plan's release provision that precludes the release of:

> (a) any post-Effective Date obligations of any party or Entity under the Plan, any Asset Sale, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale or (b) *any Person from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence* by such Person.

(ECF No. 673 at 124 (emphasis added); *see also* ECF No. 958 at 6–7). Essentially, Tilden argues that if Lilis no longer has the unpaid royalties, Lilis must have fraudulently or wrongfully disposed

---

[6] Additionally, some courts reject the use of Rule 60(b)(3) as a basis for relief from confirmation orders. *See In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 898031, at *3 (Bankr. S.D.N.Y. Mar. 29, 2006) (citing *In re Chipwich, Inc.*, 64 B.R. 670, 678 (Bankr. S.D.N.Y. 1986)) (noting that some courts hold that § 1144 "provides the sole basis to revoke a confirmation order"). Moreover, relief from a confirmation order must be sought through an adversary proceeding, which Tilden has not initiated. FED. R. BANKR. P. 7001(5).

[7] Tilden's May 5, 2021 "Motion to Allow Claims" did not seek relief from the Confirmation Order. (ECF No. 875). At the earliest, Tilden implicitly sought relief from the Confirmation Order in Tilden's June 30, 2021 response to the Trustee's Omnibus Objection to Certain Proofs of Claim. (ECF No. 904 at 1–2).

of the royalties in derogation of Tilden's rights. Hence, a claim against Lilis based on fraudulent or wrongful conduct would not have been discharged under the plan.

Tilden's argument suffers a fatal flaw. The release provision containing the fraud and willful misconduct carve-out concerns third-party releases. However, 11 U.S.C. § 1141 governs Lilis's discharge. And neither the Code nor Lilis's Plan restrict the discharge of claims arising from fraud or willful misconduct.

Moreover, the Plan's treatment of unpaid royalties controls the resolution of Tilden's claims, not the carve-out on which Tilden relies. The carve-out language clarifies that, "[n]otwithstanding anything to the contrary in the foregoing, *the releases set forth above do not release* . . . any claim or Causes of Action related to an act or omission that is determined . . . to have constituted actual fraud, willful misconduct, or gross negligence by such Person." (ECF No. 673 at 124 (emphasis added)). The carve-out indicates that its effect is limited to the Plan's release provision, not to the Plan's provision settling unpaid royalty claims or to the discharge itself. (ECF No. 673 at 101, 124). Tellingly, the settlement of unpaid royalty claims contains no similar carve-out for fraud or misconduct claims. The Plan does, however, explicitly settle "*any and all* Claims, liabilities, and obligations *arising*" from "*all rights* to payment or production *resulting from any* working interest . . . , and certain other royalty or *mineral interests*." (ECF No. 673 at 101 (emphasis added)). "[A]ny and all claims" encompasses Tilden's claim to the unpaid royalties, as well as any other claims Tilden might have arising from its mineral interest. In satisfaction of "any and all" of its claims, Tilden received a general unsecured claim.

## CONCLUSION

Tilden's request for relief from the Confirmation Order is denied. The Liquidating Trustee's request to confirm that Tilden's claim is a general unsecured claim is granted. A separate Order will be entered.

SIGNED 04/07/2022

_____
Marvin Isgur
United States Bankruptcy Judge